## PERINE & CROCHERON v. GEORGE.

1. E G, a garnishee answered, that S G was indebted to A S, in the sum of $5,000, and to secure its payment, conveyed to him a house and lot by way of mortgage; afterwards the same property was sold under a *fieri facias* against the estate of S G, and A S became the purchaser; subsequently, A S sold it at public auction, and E G bid it off at $10,005—having first agreed with A S, that upon the payment to A S, of the sum of $6,000, the amount due him on the mortgage and the sum advanced on the purchase under execution, the latter should relinquish to him the residue of the sum at which the property was bid off, remarking that he, E G, and S G might do as he pleased with it: *Held*, that the answer of the garnishee did not show such an indebtedness to S G as au_ thorized the court to render a judgment against him : that if S G had an interest in the property, either as mortgagee or by contract with Saltmarsh, he could not relinquish it without consideration to E G, so as to defeat his creditors, but himself or his creditors must assert that right in equity.

WRIT of Error to the Circuit Court of Dallas.

The plaintiffs in error recovered a judgment against Stewart George, in the County Court of Dallas, and filed their affidavit under the statute, on which garnishment issued to the defendant, requiring him to appear and answer on oath what he was indebted, &c. to the defendant in the judgment. Thereupon, the garnishee answered that he became the purchaser on the fourth of July, 1842, of the tavern in the town of Cahawba, called the Cahawba

hotel, at public auction, for the sum of ten thousand and five dollars : that the property was sold by Alanson Saltmarsh as his own, and other persons were present at the sale, and bid for it—one of them bidding as much as ten thousand dollars. The tavern had previously belonged to Stewart George, the brother of the garnishee, but becoming greatly involved in debt, he gave Saltmarsh mortgages on the same to the amount of five thousand dollars. A short time previous to the sale at which garnishee purchased, an execution against the estate of Stewart George was levied on the tavern, and it was sold thereunder to Saltmarsh, who became the purchaser (as he said) to secure the payment of his demands; the amount of which mortgages, and execution included, were six thousand dollars. Before the sale at which the garnishee became the purchaser, it was fully understood between himself and Saltmarsh, that the latter had no claim on the property for any thing more than six thousand dollars, and relinquished his right to all beyond that sum to the garnishee, telling him that as between himself and his brother, he (the garnishee) might do as he pleased with the purchase money over that sum. Garnishee and his brother agreed, before the former became a bidder for the tavern, that no matter at what price he bid it off, he was only to pay the amount of Saltmarsh's demand ; if the purchase was made at a sum beyond, he was not to be liable for the payment of the excess to any one. Stewart George, at that time, was much embarrassed, but had always been in possession of the tavern, and the garnishee made the arrangement for the purchase, in order " to accommodate him, and relieve him from his difficulties."—— That the balance of the sum bid, after paying Saltmarsh, was four thousand and five dollars, which garnishee has never paid to any person. Garnishee then declares, that he was not indebted at the service of the garnishment, to the defendant in the judgment, in any sum whatever, &c. On this answer the court rendered a judgment against the garnishee, for the sum of six hundred and eighty-five 06-100 dollars, being the amount due on the judgment against Stewart George.

The cause was removed by writ of error from the county to the circuit court, and there reversed, on the ground, that the answer of the garnishee did not disclose such an indebtedness as authorised the judgment against him ; and the correctness of the latter judgment is now assigned for error.

Perine & Crocheron v. George.

Wm. Hunter, for the plaintiff in error. The answer of garnishee is to be taken all together, and if from a detailed statement of facts a liability to pay money is deducible, the judgment of the county court was correct, although the garnishee may expressly negative an indebtedness. [Mann v. Buford, 3 Alabama Rep. N. S. 312.] 2. Saltmarsh, by his purchase at the sheriff's sale, took the tavern as a security for the amount of his mortgages, and the execution under which he purchased. This is shown by the answer. The interest beyond the six thousand dollars, remained in Stewart George. 3. By the purchase of the garnishee on the 4th July, 1842, he became indebted to the defendant in the judgment, to the amount of four thousand and five dollars, and the agreement between Stewart George and the garnishee, that the latter, if he would pay the demands of Saltmarsh, should hold the property free from all claim of Stewart George, was void as against his creditors, and cannot be upheld at law, or in equity.—[See Cato v. Easley, 2 Stew'ts Rep. 214 ; Miller v. Thompson, 3 Porter's Rep. 196 ; Read v. Livingston, 3 Johns. Ch. R. 431.]

G. W. Gayle, for the defendant in error, insisted, 1. That the defendant in the judgment had no interest in the tavern when sold by Saltmarsh, and the latter gave the purchase money beyond six thousand dollars to the garnishee. This he had a right to do without furnishing any just cause of complaint to Stewart George, or his creditors. 2. The garnishee has denied an indebtedness, and in addition thereto stated facts from which it cannot be inferred. To authorize a verdict against the answer, it should have been found untrue upon an issue regularly made up and submitted to a jury. [See 2 Porter's Rep. 546 ; 6 Id. 365 ; 3 Ala. R. N. S. 312 ; Aik. Dig. 42–3 ; 2 Stew. R. 86.]

COLLIER, C. J.—Although the answer of the garnishee is not made a part of the record by bill of exceptions, yet it must be regarded as such, as it appears to have been acted on, and made the foundation for the judgment of the county court. The answer concludes with a prayer that the garnishee may be discharged, and the judgment continues thus, " which plaintiffs, by their attorney opposed, and came and moved the court for judgment on such answer, for the amount due for damages, interest, and costs on plaintiff's judgment in this case ; which motion be-

ing heard, &c." In fact, the answer and judgment are so incorporated, that it is fairly inferrable that the garnishee made his statement orally in court, and that it was written out by the clerk as a warrant for the judgment.

In Presnall v. Mabry, [3 Porter's Rep. 105,] this court say, "It is a clear principle of law, that a judgment cannot be rendered on the answer of a garnishee, against him, unless there is a distinct admission of a legal debt, either due or to become due, by him, to the defendant in the original suit." But in Mann v. Buford, [3 Ala. Rep. N. S. 312,] it was held, that the garnishee need not admit in express terms that he owes a sum of money to the person whose debtor he is supposed to be, but it is enough if he states facts from which his indebtedness must be inferred. [See also Baker v. Moody, 1 Ala. Rep. N. S. 315.] The denial by the garnishee that he is indebted to Stewart George, would be entirely disregarded, if the facts he discloses showed the reverse to be true, but such cannot be assumed to be the case. He states that Saltmarsh, by the purchase under execution, became the proprieter of the tavern, and was entitled both at law and in equity to hold it against all persons, but was willing to dispose of it for six thousand dollars; being the aggregate of his mortgages and the sum paid upon his purchase under execution, and did actually relinquish the excess beyond that sum to the garnishee, remarking that the latter and his brother might do as he pleased with it. This statement unexplained by any thing else, shows that the garnishee, in virtue of his purchase, became the proprietor of the tavern, free from all liability to pay Stewart George any thing.— Assuming the answer to be true, as we must, in the attitude in which the case is presented, and the inference is, that Saltmarsh became the proprietor of the hotel, and sold it to the garnishee for ten thousand and five dollars, but remitted all above six thousand. That Saltmarsh united in himself both the legal and equitable titles, cannot, upon the record before us, be disputed, and this being conceded, there is as little room for making the garnishee the debtor to the defendant for the sum remitted.

If Saltmarsh did not perfect his title by the purchase at sheriff's sale, but was a mortgagee with, or without a power of sale, then he was incompetent to make the arrangement with the garnishee which is alleged, and the latter by his purchase, would become substituted to the rights only which he had. If Stewart

George, either as mortgagor, or by contract with Saltmarsh was entitled to an interest in the property, it is perfectly clear, that he could not relinquish it to the garnishee so as to prejudice the claims of creditors. Such an interest would be regarded in the same point of view as real or personal estate that was tangible, and the one could no more be given away, or conveyed so as to delay, hinder and defraud creditors, than the other. But if the defendant in the judgment had such a right, of which the record does not sufficiently inform us, it must be asserted in a court of equity, by himself or a creditor. That court is competent to the adjustment of all equities and trusts which may be shewn to exist.

From the view taken it results, that the county court erred in rendering a judgment against the garnishee, its judgment was rightly reversed by the circuit court; and the judgment of the latter court is consequently affirmed.